[Civ. No. 13928.   Second Dist., Div. Three.   Oct. 25, 1943.]

MAUDE THORNDYKE, Respondent, v. R. B. JENKINS, Appellant.

[Civ. No. 13929.   Second Dist., Div. Three.   Oct. 25, 1943.]

EDNA D. McKENNEY, Respondent, v. R. B. JENKINS, INCORPORATED (a Corporation) et al., Appellants.

Hunter & Liljestrom and J. D. Willard for Appellants.

Kimpton Ellis and Benjamin Lewis for Respondents.

SHINN, J.—In separate actions default judgments for damages were rendered against appellant R. B. Jenkins in favor of Maude Thorndyke and Edna D. McKenney. Defendant made a motion in each case, after judgment, to quash service of summons and to vacate the judgment on the ground that no service had been made and, after denial of these motions moved in each case before a judge of another department to vacate the defaults and judgments under section 473 of the Code of Civil Procedure, on the grounds of alleged mistake and excusable neglect. These motions also were denied. Appeals from the several orders have been consolidated and are presented upon a single set of briefs.

The proof as to service was the same in each case, the motions to quash were heard together and may be treated by us as a single motion. Affidavits were filed on behalf of plaintiffs by deputy sheriffs to the effect that they had made repeated unsuccessful efforts to make service upon defendant

Jenkins before the process was placed in the hands of one Yetta Price for service. Yetta Price stated in her affidavit that, after several attempts to serve the papers, she stationed herself near defendant's residence, that as defendant emerged from the rear door and started toward his garage she entered the adjoining yard with the summonses, complaints, and two subpoenas duces tecum in her hand; that when defendant saw her he exclaimed, "I won't take it, I won't take it; you're too smart, but I won't take it," and that affiant then threw the papers, which were folded together and had a rubber band around them, over an openwork wire fence between the two yards and that they landed at the feet of defendant, as she said to defendant, "It doesn't make any difference to me, Dr. Jenkins, whether you take them or not, they are court summonses." It is not contended by appellant that the acts of Yetta Price, as stated in her affidavit, were insufficient to constitute legal service. The contention is that the court, upon the motion to quash, should have rejected the foregoing averments in the affidavit of the process server because they were denied in the affidavit of defendant and contradicted as to the manner in which the papers were thrown over the fence, in an affidavit by a neighbor who witnessed the proceedings. There is little more than a token argument upon the point. Counsel for appellant in their opening brief state, ". . . appellant recognizes that when an order or judgment finds support in facts determined by the trial court upon any substantial evidence, such order or judgment will not be disturbed on appeal." ▮▮ The affidavit of the process server, stating in unequivocal terms the facts we have recited, considered with other evidence which tended to prove that defendant had been evading service, furnished substantial evidence to support the orders denying the motions to quash, and the implied finding that the facts were as stated in the affidavit is conclusive upon appeal.

Upon the motions to set aside the defaults and judgments, additional affidavits and counteraffidavits were filed in support of and against defendant's contention that his failure to appear in the action resulted from his mistake and excusable neglect. These motions were presented together and upon the records and files in both cases. In his affidavit on these motions defendant stated that he had received letters from counsel for the respective plaintiffs stating that sum-

mons had been served on March 3, 1942, and notifying him that unless he made appearance within a stated time, which was in excess of that allowed by law, his default would be entered, that he had answered the letters, denying that the papers had been served and had thereafter received other letters from the attorneys informing him that default judgments had been taken against him. The affidavit further stated that defendant, after learning of the judgments, consulted his attorneys and told them that at no time had any person served or attempted to serve him with process. By affidavit of one of defendant's counsel it was shown that defendant had told his attorneys that no papers of any sort relating to said actions had been served upon or received by him. (It was after they had been so informed that his counsel, relying upon his statement, moved to quash service of summons.) However, defendant did not make his motions under section 473 of the Code of Civil Procedure until four and a half months after service of summons and 44 days after the motions to quash had been denied. The motions to set aside the defaults and judgments were filed more than three months after the judgments were rendered.

The facts we have stated, considered with the court's decision that defendant had been personally served on March 3, 1942, show no abuse of discretion in the denial of the motions to vacate the defaults and judgments. When the second motions were presented defendant was relying in part upon his affidavit that service had not been made and he did not admit the truth of the foregoing statements of the Yetta Price affidavit. Since the court, in denying the first motions, had accepted as true the facts stated in the Yetta Price affidavit, and as no application was made to vacate the first orders, the judge who heard the second motions properly concluded that defendant had not truly or fully informed his attorneys of the acts of the process server and of his own remarks to her, which the court had held constituted valid service.

Upon the second motions the only question was whether defendant's failure to appear had resulted from his mistake or excusable neglect. It is insisted that the court should have found that defendant and his attorneys were acting under a mistake of law but there was no evidence that they were mistaken upon any point of law, and it does not appear that any question of law could have arisen under de-

fendant's version of the facts. We do not see how the court could have failed to hold, in passing upon the second motions, that defendant's failure to appear was due solely to his denial that service had been made. If he had given his attorneys a complete and accurate statement of the facts and if it had been shown that they had believed that under those facts there had not been valid service, an entirely different question would have been presented, for it would then have appeared that they had acted under a mistake of law. We also would have a different question to determine, and the case of *Waite* v. *Southern Pacific Co.*, (1923) 192 Cal. 467 [221 P. 204], relied upon by appellant, would be in point. In that case defendant's counsel failed to appear in a state court after the action had been removed to the United States District Court and defendant's default had been entered while the matter was pending in the latter court, although it was later remanded to the state court. The court reversed an order denying a motion to vacate the default and judgment, but this was done upon the sole ground that defendant had acted under a mistake of law as to the jurisdiction of the state court, which the court held was a reasonable one and excusable under the circumstances. We have no such situation here. When defendant based his right to relief upon an issue of fact he could not, after the issue was decided against him, assert a mistake of law which, if meritorious, would have to be founded upon facts which were contrary to his sworn statements and necessarily contrary to his belief. He asserted no mistake of law whatever but persisted in his denial that he had been served at all. His predicament resulted from his failure to acquaint his attorneys with the true facts, and from their belief in his misstatements.

The foregoing conclusions have been reached by the application of the familiar rules that all intendments are in favor of the correctness of the orders appealed from and that such orders cannot be reversed except upon a showing of an abuse of discretion. Since the motions to vacate were without merit, it is unnecessary to determine whether the orders denying the second motions should be affirmed upon the additional ground urged by respondents that the applications were not made within a reasonable time, as required by section 473, Code of Civil Procedure.

The further point is made that the judgment in the Thorn-

dyke case was against defendant "R. B. Jenkins, doing business under the fictitious name of Angelus Hospital." It was alleged in the complaint that defendant conducted a hospital under the fictitious name of Angelus Hospital.

In the McKenney case the judgment was against "Dr. R. B. Jenkins, Dr. R. B. Jenkins Clinic, and Angelus Hospital, which is owned and operated by defendant R. B. Jenkins." The complaint in that case had named as defendants Dr. R. B. Jenkins, Dr. R. B. Jenkins Clinic, and Angelus Hospital Association of Los Angeles. By amendment the complaint named as a defendant "Angelus Hospital, which is owned and operated by defendant R. B. Jenkins." The amended affidavit of service of summons in this case stated that service had been made on "Dr. R. B. Jenkins Clinic, by serving Dr. R. B. Jenkins, owner, Angelus Hospital, sued herein as John Doe One by serving Dr. R. B. Jenkins, owner."

It is contended that the court had no jurisdiction to render judgment in the McKenney case against R. B. Jenkins Clinic or Angelus Hospital because the record does not show whether they were separate entities or merely names under which Dr. Jenkins was doing business. If either is a separate entity and if either judgment should be construed as being against them or either of them, and not simply against appellant Jenkins, neither the clinic nor the hospital moved to quash service of summons or to vacate the defaults and judgments, and neither of them appealed from any order that was made or from the judgments. Since these supposed entities are not before us, we refrain from expressing an opinion as to the construction which should be given the judgments. Upon the other hand, if the clinic and the hospital were only names used by Dr. Jenkins the scope of the judgment against him is no greater because it names them also. Dr. Jenkins has not appealed from the judgment. He is correctly named in it and we cannot see how he could be aggrieved by the addition of unnecessary labels.

Defendant received fair and courteous treatment at the hands of counsel for the respective plaintiffs. In neither case was a default entered until after he had been given additional time for an appearance and counsel had received a letter from him denying that service had been made. He was notified that default judgments would be taken against him if he refused to appear and he chose his course advisedly. We find no reason to disturb the orders complained of.

The respective orders appealed from in each case are affirmed.

Desmond, P. J., and Bishop, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 20, 1943.