

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## IN THE MATTER OF THE GUARDIANSHIP
## OF THE PERSON AND ESTATE OF
## LUCIA G. McDONALD.

Supreme Court Case No. CVA21-001
Superior Court Case No. SP0087-20

## OPINION

## Cite as: 2023 Guam 3

Appeal from the Superior Court of Guam
Argued and submitted on December 16, 2022
Hagåtña, Guam

Appearing for Appellant Lucia G. McDonald:
Jacqueline Taitano Terlaje, *Esq*.
Law Office of Jacqueline Taitano Terlaje, P.C.
284 W. Chalan Santo Papa
Hagåtña, GU 96910

Appearing for Appellee Claire Meno:
Jefferey A. Cook, *Esq*.
Cunliffe & Cook
A Professional Corporation
210 Archbishop Flores St., Ste. 200
Hagåtña, GU 96910



**E-Received**
3/31/2023 3:55:07 PM

BEFORE: ROBERT J. TORRES, Presiding Justice; KATHERINE A. MARAMAN, Associate Justice; and ALEXANDRO C. CASTRO, Justice *Pro Tempore*.[1]

**PER CURIAM:**

**[1]**      Among the many fundamental rights in our society is the right to control one's person and decide for oneself, despite the wishes of others.  It is one of the hallmarks of a free society.  At the same time, not everyone can make proper decisions on one's own behalf.  Whether through age, disease, or other cause, sometimes a person is unable to properly manage and take care of themselves or their property.  When a person is unwilling or incapable of admitting this, and is likely to be deceived or imposed upon by artful or designing persons, courts have the power to appoint a guardian.  Court intervention should not come lightly, and there are important procedural protections in place to protect the fundamental liberty of potential wards.

**[2]**      Because these protections were not respected here, we vacate the Order of the trial court appointing the Public Guardian to serve as a temporary guardian for Lucia Garcia McDonald ("Tan Lula")[2] and remand this case to the trial court for further proceedings not inconsistent with this Opinion.[3]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[3]**      This case began with an *Ex Parte* Petition for the Appointment of Guardians of the Person and Estate of an Incompetent Person ("Petition") filed by Dolores M. Pangelinan and Claire M. Meno out of concern for their mother, Tan Lula.  Dolores and Claire asserted that their mother

---

[1] The signatures in this Opinion reflect the titles of the justices when this matter was argued and submitted.

[2] Counsel for Lucia Garcia McDonald refers to her client by the CHamoru term of respect for an elderly woman ("Tan") followed by Mrs. McDonald's "better known as" name ("Lula").  *See* Appellant's Br. at 1 (July 9, 2021).  In deference to counsel's preferred designation of her client as Tan Lula, and in recognition that referring to Mrs. McDonald as "Tan Lula" rather than simply by her first name is considered more culturally respectful, the court will refer to Lucia Garcia McDonald in this Opinion as Tan Lula.

[3] This Opinion supersedes the Order issued by this court on December 22, 2022.

suffers from severe dementia and is unable to manage her own financial, legal, or medical affairs. The evidence for this assertion was a letter from a doctor stating that, in his view, Tan Lula suffers from severe dementia. At oral argument before this court, Tan Lula represented this doctor does not speak CHamoru—her preferred language. Oral Arg. at 10:15:11-10:15:18, 10:17:46-10:17:50 (Dec. 16, 2022).

[4]      Several of Tan Lula's other children and Tan Lula herself objected to the Petition filed by Dolores and Claire. The trial court held a hearing to consider the viewpoints of the several parties. Though she was present, Tan Lula was not served the Petition that started these proceedings, nor a notice for the hearing. No testimony was taken at this hearing. Given the disagreement among the parties as to whether Tan Lula needed a guardian in the first place and who, if needed, that guardian should be, the Superior Court decided that Public Guardian Marcelene C. Santos would serve temporarily as guardian of Tan Lula until completion of the *ex parte* proceedings.

[5]      Tan Lula objected to this appointment. She pointed out that per Guam law, a guardian can be appointed over a ward in a hearing only where the prospective ward has at least five days' notice of such a hearing. In response, the trial court said, "We'll have a hearing on [February] 26th, and the result will still be the same. . . . [W]e'll have a Zoom hearing and I would just tell you the same what I'm saying now. Okay?" Transcript ("Tr.") at 20 (*Ex Parte* Appl., Feb. 17, 2021). Tan Lula was given notice of this hearing. At the hearing on February 26, the trial judge appointed the Public Guardian to be the guardian of Tan Lula pending the proceedings in the *ex parte* action. No testimony was taken at this hearing either. At oral argument before this court, Tan Lula claimed she was never personally served a copy of the *ex parte* Petition which commenced these proceedings. Oral Arg. at 10:18:47-10:19:11 (Dec. 16, 2022).

**[6]**      Tan Lula timely appealed the appointment of the Public Guardian to this court.  Her appeal was then delayed as Dolores and Claire filed a Notice that they were withdrawing their Petition in the Superior Court.  The Superior Court could not rule on that notice, however, as the case was stayed because of Tan Lula's pending appeal.  This court remanded the case to the Superior Court to address the Notice of Withdrawal and determine what effect that withdrawal had upon the appointment of the Public Guardian for Tan Lula.

**[7]**      After this remand, Claire announced that she wished to withdraw her Notice to Withdraw her Petition; in other words, she wished to continue to seek the appointment of a guardian for Tan Lula.  Though Claire now asks for different relief, the trial court noted its "jurisdiction continues over Claire M. Meno's reinstituted Petition for appointment of guardianship over [Tan Lula] based on the fact that [Tan Lula] is an incompetent person unable to care for herself."  Record on Appeal ("RA"), tab 95 at 4 (Dec. & Order, Aug. 29, 2022).  In the meantime, Public Guardian Marcelene Santos remains the guardian for Tan Lula.  This court was satisfied that it could proceed with the case.  Order at 2 (Nov. 18, 2022).

## II.  JURISDICTION

**[8]**      This court has jurisdiction over appeals from orders granting or revoking letters of guardianship.  15 GCA § 4801 (2005); 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-262 (2022)); 7 GCA § 3107 (2005).

## III.  STANDARD OF REVIEW

**[9]**      "[T]he Superior Court's power to appoint a guardian is an issue of statutory interpretation reviewed *de novo*."  *In re Guardianship of Moylan* ("*Moylan V*"), 2018 Guam 21 ¶ 7.

//

//

## IV.  ANALYSIS

[10]     Tan Lula raises three issues on appeal: (1) the refusal by the trial court to let her testify on her own behalf before appointing the Public Guardian violated 15 GCA §§ 3802 and 3803; (2) the failure to hold an evidentiary hearing deprived her of her constitutional right to due process; and (3) the appointment of the Public Guardian was not authorized as Tan Lula's daughter, Lucilla McDonald, was willing to serve as guardian.[4]  *See* Appellant's Br. at 3 (July 9, 2021).

[11]     We begin with the statutory argument.  As Tan Lula correctly notes, Guam's current guardianship statutes were modeled on historical California ones.  *See Moylan V*, 2018 Guam 21 ¶ 13 (citing Guam Probate Code § 1461 (1953) (Foreword)).  The 1930s version of California's law is largely the same as Guam's current code.  *Compare* Cal. Prob. Code §§ 1460-62 (1931), *with* 15 GCA §§ 3801-03 (2005).  Thus, California decisions adjudicating the historical California code are persuasive authority in interpreting Guam's current law.  *See In re Guardianship of Moylan* ("*Moylan VI*"), 2021 Guam 15 ¶ 21.

[12]     Tan Lula is right to cite *In re Waite's Guardianship* in analyzing the present situation.  There, an elderly woman appealed a trial court decision granting letters of guardianship because she was incompetent.  *In re Waite's Guardianship*, 97 P.2d 238 (Cal. 1939) (in bank).  The appellant in that case had wanted to testify on her own behalf but was refused by the trial court during a hearing to appoint a guardian.  *Id.* at 238.  The California Supreme Court reversed,

---

[4] Whether the issue of defective notice was properly raised on appeal is not clear.  Tan Lula was never served with a notice for the first hearing, but she does admit to getting a notice for the February 26 hearing.  Appellant's Br. at 7-8.  Her brief does not explain if this second notice complied with our past holdings on notices for guardianship hearings.  *See In re Guardianship of Moylan* ("*Moylan VI*"), 2021 Guam 15 ¶ 24.  Because we resolve this case on other grounds, we need not spend too much time on this issue.  Still, we want to reemphasize our holding that

> notice must: be personally served on the potential ward at least five days before the hearing; detail the time, place, and location of the hearing; and be served in a form that can reasonably apprise the potential ward of the purpose of the hearing so that the potential ward can prepare objections.

*Id.*

holding that the language of the law "seems to contemplate an examination." *Id.* (quoting *In re Coburn*, 131 P. 352, 358 (Cal. 1913)). The court stated that "the right of a party to testify in h[er] own behalf is fundamental" and that "[i]t is difficult to conceive of a situation in which a party has a greater right to, or need for, h[er] own testimony than in the type of proceeding . . . . [where] [t]he right to control her own person and affairs was taken [away] . . . ." *Id.*

[13]    Even setting the California case aside, an independent review of the statute supports Tan Lula's position as well. Title 15 GCA § 3802 requires at least five days' notice of the hearing before a guardian can be appointed. That provision also requires that the potential ward, "if able to attend, *must* be produced at the hearing." 15 GCA § 3802 (emphasis added). Finally, 15 GCA § 3803 provides, "If, *upon the hearing*, it appears to the court that the person in question is insane or incompetent, the court must appoint a guardian . . . ." 15 GCA § 3803 (emphasis added).

[14]    "In cases involving statutory construction, the plain language of a statute must be the starting point." *Pangelinan v. Gutierrez*, 2000 Guam 11 ¶ 23. We find it instructive that the statute requires the potential ward be at the hearing; the purpose of this requirement cannot only be to make the potential ward a mere observer. This is confirmed by looking at the appointment section. A trial court may appoint a guardian only if "it appears to the court" "upon [a] hearing" that a prospective ward is incompetent. 15 GCA § 3803. Taken together, these phrases require the trial court to hold some hearing before making its determination. Given that the statute requires a hearing and requires the prospective ward to be at the hearing, we conclude that—at minimum— the prospective ward must be allowed the opportunity to testify at such a hearing, assuming the ward is capable of testifying. The trial court deprived Tan Lula of this opportunity, Oral Arg. at 10:15:45-10:16:29, 10:28:55-10:29:46 (Dec. 16, 2022), and, in doing so, violated 15 GCA §§ 3802 and 3803.

**[15]**    Because we find a violation of 15 GCA §§ 3802 and 3803, we decline to consider Tan Lula's other arguments. *See Hemlani v. Hemlani*, 2015 Guam 16 ¶ 33 ("As a general appellate principle, a court will not address issues unnecessary to the resolution of the case before it.").

**[16]**    Before concluding, we wish to note some restraint on the Opinion we issue today. Sometimes, a prospective ward cannot make it to a hearing. Yet, a decision on the appointment of a guardian could be critical. The statute requires the participation of the prospective ward "if *able* to attend." 15 GCA § 3802 (emphasis added). Affidavits and other testimony from clinicians can create a—potentially rebuttable—presumption that a prospective ward cannot attend, and a hearing where a guardian can be appointed can still be held. *See In re Andrews' Guardianship*, 110 P.2d 399, 401-02 (Cal. 1941). This provides a *limited* exception when a guardian may be appointed without the prospective ward being given the opportunity to be heard at the hearing.

**[17]**    Still, in acting on behalf of prospective wards, courts must always keep in mind the wards' best interests. *See Moylan VI*, 2021 Guam 15 ¶ 41 (citing *In re Guardianship of Moylan* ("*Moylan I*"), 2011 Guam 16 ¶ 17). Just because a prospective ward is not present at a hearing does not mean his or her perspective should be ignored by the court; the trial court must not be content to simply accept the views of whomever happens to be bringing a Petition for Guardianship. Another way this can be avoided is to ensure the prospective ward participates in the hearing in some form. Gone are the days when all court proceedings had to be conducted in a courtroom. With online video conferencing software like Zoom or even a telephone call, potentially immobile prospective wards can still participate in these proceedings. Conducting a contested guardianship hearing without the prospective ward's involvement should be avoided if at all possible.

//

//

## V.  CONCLUSION

**[18]**     Tan Lula was not allowed to speak on her own behalf and explain her view as to why an invasion of her fundamental right to control her person was unwarranted.  That was error.  The Order appointing the Public Guardian to serve as Tan Lula's temporary guardian is **VACATED**, and this matter is **REMANDED** to the trial court for further proceedings not inconsistent with this Opinion.


| /s/ | /s/ |
|---|---|
| KATHERINE A. MARAMAN | ALEXANDRO C. CASTRO |
| Associate Justice | Justice *Pro Tempore* |


/s/
ROBERT J. TORRES
Presiding Justice